## MYRTLE L. SLOAN v. VEAZEY-CLARKE COMPANY, et al.

Western Section.  March 23, 1928.

Canada & Williams, of Memphis, and Horace Sloan, of Jonesboro, Ark., for appellant.

Allen Hughes, of Memphis, for appellee.

SENTER, J.  On January 7, 1925, complainant and defendant entered into a contract for the exchange of property.  By the terms of this contract the complainant agreed and contracted to convey to the defendant certain property located in the City of Memphis for the consideration that defendant would convey to complainant a tract of 640 acres of land situated in Cross county, Arkansas.  The contract between the parties is in writing, containing several provisions.  It appears that both the property of complainant and defendant had certain encumbrances thereon, and the encumbrance debts were assumed by the respective parties.  The contract further provided that actual possession of the farm land was to be given to the complainant immediately upon the signing of the contract, and likewise the defendant was to receive the rents and income from the Memphis property from the signing of the contract, January 7, 1925.  The contract further provided that abstracts of title were to be furnished by the respective parties before deeds would be

executed, and each party to have the right to have the title examined and approved by their respective attorneys, etc. Other provisions were made in the contract not necessary to be noted, except the provision with reference to taxes and assessments on the respective properties. On this subject the contract provides as follows:

"All parties to this contract are to pay all taxes and assessments against the property they now own for the year 1924, and each is to assume all taxes and assessments for the years thereafter."

It is the above provision that forms the basis of this suit. The lands of the defendant are located in a special road improvement district and a drainage district, and in the year 1922 certain improvement assessments were made against the lands embraced within the improvement districts to be paid in annual installments. This fact was known to complainant at the time the contract was signed, and the only question involved in this litigation is with reference to the assessments levied against the farm land in Arkansas and payable between first Monday in January, and April 10, 1925, and as to whether said assessments for improvements payable between the first Monday in January and April 10th covered the year 1924 or the year 1925.

It appears that on February 11, 1925, the parties and their respective real estate agents, met in the office of Mr. Gannaway, attorney for both of the parties to the contract, for the purpose of having the respective deeds prepared and executed by. the respective parties, and to close the transaction. At this meeting the question arose for the first time as to which of the parties under the contract would be subject to the payment of the drainage and road improvement taxes due to be paid by April 10, 1925. Veazey-Clarke Company contended that the road improvement and drainage assessments against the property, under the assessment made against the same and according to the resolution passed by the directors of the improvement project, were payable annually, and for the current year, and that said assessments were for the year of 1925, and not for the year 1924. Mrs. Sloan and her husband contended that it was their understanding that they were to pay no taxes or assessments during the year 1925, and that the assessments made payable between January 1st and April 10th, 1925, covered the assessment for the previous year, 1924, and therefore under the contract it was the obligation of Veazey-Clarke Company. At the time this controversy arose, the deed had been prepared. The warranty clause in the deed from defendant to complainant is in the following language:

"The party of the first part hereby covenants with the party of the second part that it will forever warrant and defend the title to said land against all lawful claims whosoever, except

such drainage or other special assessments now a lien on said land as are not yet due and payable.''

When this controversy arose the parties agreed to a supplemental contract, which admittedly was entered into for the purpose of preserving the rights of the respective parties on the question of the assessments referred to. The defendant declined to accept the deed with the clause of warranty as above quoted, insisting that it did not conform to the provisions of the contract entered into between the parties, and this resulted in the supplemental contract between the parties as follows:

''The contract for the purchase of the above property provides as to taxes: 'All parties to this contract are to pay all taxes and assessments against the property they now own for the year 1924, and each is to assume all taxes and assessments for the years thereafter,' Veazey-Clarke Company having deposited with Church & Gannaway check for $411.14 upon 1924 taxes. If under the wording of the above contract the road improvement and drainage taxes payable with the State and county 1924 taxes are to be paid by Veazey-Clarke Company, they agree to furnish additional amount necessary to pay same; if by said Sloan, the above sum of $411.14 to be turned over to said Sloan upon his payment of these taxes.''

The $411.14 covered the regular State and county taxes on this property for the year 1924. Under the Arkansas law the taxes assessed for State and county purposes, which we will refer to as the State and county tax, for the year 1924, became due and payable from first Monday in January to April 10, 1925. In other words it is conceded that the State and county taxes assessed under the laws of the State of Arkansas are collected the year following the assessment. It also appears that the collector of taxes for the State of Arkansas also collects the assessments for benefits for road improvement districts and drainage districts at the same time that he collects the State and county taxes, and the tax receipt given by the collector of taxes to the tax payer covers both the State and county taxes and the annual installments, or assessments for drainage and road purposes. The items are contained in one receipt, but the respective items are separately set out in the receipt.

At the hearing of the cause the Chancellor found the issues in favor of the defendants and decreed accordingly, dismissing the bill of complainant, and to this action of the court the complainant excepted, prayed and perfected an appeal to this court assigning errors.

We are of the opinion that the provision in the contract with reference to the assumption of all taxes and assessments accruing subsequent to the year 1924, must control in the determination of the question presented. Without reference to the Arkansas statute

on the subject of the assumption of future assessments by the vendee, and independent of any conflict in the warranty clause in the deed with the provision in the contract, the provision in the contract must control for the reason that at the time the deeds were executed and exchanged between the parties, there was a collateral contract or agreement which specificially preserved and reserved the rights of the respective parties on this question as to which of them would be obligated for the payment of the particular installment or assessment involved in the controversy between the parties. The deeds were executed and accepted subject to the collateral agreement entered into between the parties at the time, and to the end that the deeds could be recorded, and the parties continue in possession as they had already been placed under the contract, leaving this question to be subsequently settled and determined.

Section 1495 of Crawford and Moses Digest of the Statutes of Arkansas (set out in the stipulation filed in the record), provides that the words ''grant, bargain and sell'' shall be an express covenant when used in a deed, to the grantee that the land is free from encumbrance ''done or suffered from the grantor . . .'' It is further provided by the statute . . . ''neither the statutory nor general express covenant of warranty against encumbrance shall be held to cover any taxes or assessments of any improvement district of any kind whatever formed under general statutes authorizing the assessment of lands for local improvement of any kind, . . . but the lien for any such local assessment or tax shall run with the land and be assumed by the grantee, and the grantee shall pay any and all installments of such tax or assessment becoming due after the execution and delivery of the deed, unless otherwise expressly provided.''

The Chancellor held, and we think correctly, on this subject: ''Defendant executed and delivered its deed to complainant on February 11, 1925, while the assessment for tax for 1925, became due on the first Monday in January, 1925. In the absence of an express agreement on the part of the complainant to pay all taxes and assessments subsequent to the year 1924, this 1925 assessment would have fallen on defendant. But the point was covered by the contract, and the parties were obligated to pay taxes on their own land for the year 1924 only.

''The warranty deed from the defendant to complainant contains the following: '. . . except such drainage or other special assessments now a lien on said land as are not yet due and payable.'

''Apparently this did not except from the warranty the 1925 assessment tax due and payable from the first Monday in January. It will be recalled, however, that defendant refused to execute this deed until the supplemental contract of' even date with the deed

was executed, which agreement in effect reserved the question of liability for said assessment installment.''

We fully concur in the above conclusions reached by the Chancellor with reference to the covenant of warranty contained in the deed as not binding the defendant to the payment of the drainage and road‑assessment involved, unless it be determined that this assessment payable from the first Monday in January to April 10, 1925, was, in fact an assessment for the year 1924. Hence, the only question for determination is whether the assessment payable in 1925 covered an assessment for the year 1924, or whether it covered the assessment for the year 1925.

Much has been said by appellee in the excellent brief filed, that the word ''tax,'' and the word ''assessment'' are treated as synonymous by the taxing authorities, and the tax collecting authorities of the State of Arkansas, and by common custom, and that this court will give effect to the terminology usually and customarily employed. Granting that this should be done, and granting further that by custom and practice in the State of Arkansas, assessments for improvement projects, such as roads, drainage, etc., are referred to and treated as taxes, yet the fact remains, by whatever term we may designate the assessment involved in this suit, if the resolution passed by the authorized commission, provided that the assessment should be paid annually, and in installments covering a term of years, the resolution so passed must control. The resolution on this subject provides as follows:

> ''Be it further resolved, that the tax necessary to pay said sum, with interest thereon, be paid in annual installments, which shall also include a small sum for current expenses, as follows: In each of the years 1924 to 1939, inclusive, eight per cent of the face of the assessed benefits producing $84,834.51; in the year 1940, seven and five tenths per cent of the face of said assessed benefits producing $79,532.36; and for each of the years 1941 and 1942, two and two tenths per cent of the face of the assessed benefits, producing $23,329.49; said collections to be credited, first upon the interest accruing upon said levy; and said levy to be in lieu of all previous levies for the respective years. . . .
>
> ''All of said assessments shall be paid between the first Monday in January and the 10th day of April, of each year, beginning with the year 1923, until all of said bonds, with interest, have been paid.''

This resolution was adopted in the year 1922, and the first installment, or assessment was for the year 1923, and payable between the first Monday in January and April 10th, of the year 1923. This was the assessment for the year 1923, since there had been no assessment for the year 1922. The other assessments followed in regular

sequence for each respective year. It is therefore clear that the assessment payable from January to April 10, 1925, covered the year 1925, and not the year 1924. The fact that the collection of the State and county taxes for the year 1924 is also collected between the first Monday in January to April 10th of the succeeding year, and appears on the same tax receipt as the improvement assessment or tax for the year 1925, does not afford any basis for a contention that this tax was a 1924 assessment. It simply means that the 1924 State and county tax is payable at the same time and to the same collecting official as the 1925 assessment for roads and drainage.

. A considerable part of the record is devoted to certain facts developed to the effect that McFadden, the real estate agent representing Veazey-Clarke Company in the negotiations with reference to this exchange of property, represented to complainant, or her husband who was representing her in the negotiations, that there would be no taxes or assessments to be paid during the year 1925 by the complainant on the Arkansas property, but that Veazey-Clarke Company would pay all taxes and assessments payable during the year 1925. There is evidence in the record to the effect that Mr. Sloan, husband of complainant, and who really attended to the negotiations for her, had explained to McFadden that after expending the necessary money on improvements for the year he would be unable to pay the taxes and assessments during the year 1925, and that McFadden stated that these taxes and assessments would be paid by Veazey-Clarke. McFadden was the real estate agent representing Veazey-Clarke Company in the negotiations simply, just as Montgomery was the real estate agent representing complainant. After these conversations the contract was drawn and signed by the respective parties, and by the terms of which the parties obligated themselves to pay the taxes and assessments on their respective properties assessed against the same for the year 1924, and each of the parties assumed all future taxes and assessments against the respective properties. When the misunderstanding or the controversy arose at the time the parties met to execute the deeds, they mutually agreed in writing that that question would be reserved and not to the prejudice of either party by the execution, delivery and acceptance of the respective conveyances. The contract between the parties must control, Mr. McFadden was simply the real estate agent negotiating the sale of the property for Veazey-Clarke, and when the negotiations had been worked up to a trade, the parties themselves executed and signed the original contract which carried the provision with reference to the assumption of future taxes and assessments. This provision in the contract determines the respective rights and liabilities of the parties to the contract.

86

We find no error in the decree of the Chancellor, and it is affirmed. Appellant and surety on the appeal bond will pay the cost of this appeal.

Owen and Heiskell, JJ., concur.